COHEN, J.
William Williams appeals the denial of his dispositive motion to dismiss after being convicted under Florida’s “Refusal to Submit” statute.[1] He argues that the statute, as applied to him, violates the Fourth Amendment — specifically, the Supreme Court’s recent decision in Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) — and the unconstitutional conditions doctrine. The issue presented, boiled down to its essence, is whether it is unconstitutional to punish a person criminally for refusing to submit to a breath-alcohol test when the officer conducting the test does not have a warrant. We hold that it is not and affirm.
I.
On October 4, 2013, at approximately 10:17 p.m., Williams was arrested for driving under the influence. Less than twenty minutes later, the arresting officer asked Williams to submit to a breath test to determine his blood-alcohol content; he refused. The officer did not have a warrant. Williams was then issued five uniform traffic citations, including a citation for Refusal to Submit in violation of section 316.1939, Florida Statutes. That section provides, in pertinent part:
(1) Any person who has refused to submit to a chemical or physical test of his or her breath, blood, or urine, as described in s. 316.1932, and whose driving privilege was previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, and:
*486 (a) Who the arresting law enforcement officer had probable cause to believe was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages, chemical substances, or controlled substances;
(b) Who was placed under lawful arrest for a violation of s. 316.193 unless such test was requested pursuant to s. 316.1932(l)(c);
(c) Who was informed that, if he or she refused to submit to such test, his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months;
(d) Who was informed that a refusal to submit to a lawful test of his or her breath, urine, or blood, if his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, is a misdemeanor; and
(e) Who, after having been so informed, refused to submit to any such test when requested to do so by a law enforcement officer or correctional officer
commits a misdemeanor of the first degree and is subject to punishment as provided in s. 775.082 or s. 775.083.
§ 316.1939, Fla. Stat. (2013).
Williams filed a motion to dismiss the Refusal to Submit charge, arguing that the statute is unconstitutional as applied. For purposes of the motion, the parties stipulated that: (1) the police had probable cause to ask Williams to submit to a breath test; (2) the initial stop of Williams’ vehicle was lawful; (3) Williams refused to take the breath test; (4) Williams’ driving record reflected a prior refusal to submit to a breath test; and (5) the motion to dismiss was dispositive as to the Refusal to Submit charge.
The county court denied the motion to dismiss and certified the following question as one of great public importance:
If the implied[-]consent statute provides consent to search as an exception to the Fourth Amendment warrant requirement, then can that consent be withdrawn by refusal to submit to an otherwise lawful test of breath, blood or urine and can the second such refusal be punishable as a criminal offense?
The court then accepted Williams’ no contest plea, which specifically reserved the right to appeal the denial of the motion to dismiss. Williams was sentenced to two days’ imprisonment, with two days’ credit for time served. This appeal followed.
II.
Under the unconstitutional conditions doctrine, “the government may not deny a benefit to a person because he exercises a constitutional right.” Koontz v. St. Johns River Water Mgmt. Dist., — U.S. -, 133 S.Ct. 2586, 2594, 186 L.Ed.2d 697 (2013) (quoting Regan v. Taxation With Representation of Wash., 461 U.S. 540, 545, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)). This doctrine “vindicates the Constitution’s enumerated rights by preventing the government from coercing people into giving them up.” Id. In other words, “[w]hat the state may not do directly[,] it may not do indirectly.” Lebron v. Sec’y, Fla. Dep’t of Child. & Fam., 710 F.3d 1202, 1217 (11th Cir.2013) (quoting Bailey v. Alabama, 219 U.S. 219, 244, 31 S.Ct. 145, 55 L.Ed. 191 (1911)). However, the Constitution does not prohibit “ ‘every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.’ ” Jenkins v. Anderson, 447 U.S. 231, 236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 30, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)).
*487 The most compelling case in support of Williams’ position is Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), although it is not clear whether its reasoning was based on the unconstitutional conditions doctrine or some other rationale.[2] In that case, the defendant was charged criminally with violating the San Francisco Housing Code because he refused to permit a war-rantless inspection of his residence. Id. at 525, 87 S.Ct. 1727. He alleged that the ordinance authorizing such inspections was facially unconstitutional. Id. Preliminarily, the Supreme Court stated that “except in certain carefully defined classes of cases, a search of private property without proper consent is ‘unreasonable’ unless it has been authorized by a valid search warrant.” Id. at 528-29, 87 S.Ct. 1727. The Court concluded that the defendant “had a constitutional right to insist that the inspectors obtain a warrant to search and that [the defendant] may not constitutionally be convicted for refusing to consent to the inspection.” Id. at 540, 87 S.Ct. 1727.
Camara is distinguishable in some important respects. Most importantly, section 316.1939, Florida Statutes, criminalizes the refusal to submit to a breath test only if the officer had probable cause to believe the driver was under the influence. See § 316.1939(l)(a), Fla. Stat. (2013). By contrast, the statute in Camara allowed suspicionless searches. See Camara, 387 U.S. at 526, 87 S.Ct. 1727; accord State v. Birchfield, 858 N.W.2d 302, 308 (N.D.2015) (distinguishing Camara on this basis). Nevertheless, we agree with Williams that its general reasoning is applicable to this case. If Williams had a Fourth Amendment right to refuse a breath test, criminalizing his assertion of that right would be unconstitutional. To conclude otherwise would allow the State to do indirectly what it cannot do directly. Therefore, we must determine whether the arresting officer had a legal right to search Williams, in the form of a breath test, without a warrant.
III.
The Fourth Amendment provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.... ” U.S. Const, amend. IV. A breath-alcohol test is a search subject to Fourth Amendment protections. Skinner v. Ry. Labor Execs. Ass’n, 489 U.S. 602, 616-17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); see also Maryland v. King, — U.S. -, 133 S.Ct. 1958, 1968-69, 186 L.Ed.2d 1 (2013) (“Virtually any ‘intrusion into the human body,’ will work an invasion of ‘cherished personal security’ that is subject to constitutional scrutiny.” (alteration in original) (citations omitted)).
Generally, warrantless searches are presumptively unreasonable unless they fall within a recognized exception to the warrant requirement. See, e.g., Missouri v. McNeely, — U.S.-, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013). The warrant requirement ensures that “inferences to support the search ‘[are] drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.’ ” Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (quoting Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).
*488 In Schmerber, the Supreme Court addressed blood-alcohol tests in the context of the Fourth Amendment. The issue was whether a warrantless blood draw based upon probable cause was admissible. Id. at 766-67, 86 S.Ct. 1826. The Court considered whether the test was permissible under the warrant exception for searches incident to arrest and indicated that it was not, reasoning that the considerations that the search-incident-to-arrest doctrine was founded upon have “little applicability with respect to searches involving intrusions beyond the body’s surface.” See id. at 769-70, 86 S.Ct. 1826 (“[T]he mere fact of a lawful arrest does not end our inquiry.”). The Court also noted that the fundamental privacy interests in one’s body outweighed the risk that evidence may disappear:
The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.
Id. at 769-70, 86 S.Ct. 1826. The Court ultimately concluded, however, that the blood test did not require a warrant:
The officer in the present case ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened “the destruction of evidence[.]” We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner’s arrest.
Id. at 770-71, 86 S.Ct. 1826 (citation omitted). Accordingly, the Court held that the defendant’s Fourth Amendment rights had not been violated. Id. at 772, 86 S.Ct. 1826. Although Schmerber was not explicit about what exception to the warrant requirement the blood test fell under, subsequent cases have recognized that Schmerber relied on the exigent-circumstances exception. See, e.g., McNeely, 133 S.Ct. at 1558-59; Skinner, 489 U.S. at 642-43, 109 S.Ct. 1402 (Marshall, J., dissenting).
After Schmerber, disagreement arose in the lower courts regarding whether Schmerber mandated a per se rule that warrantless blood tests were always reasonable because of the inherent evanescence of blood-alcohol content (“BAC”) evidence. See McNeely, 133 S.Ct. at 1558. That disagreement was resolved in McNeely. See id.
In McNeely, the Court was asked to determine “whether the natural metabo-lization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment’s warrant requirement for nonconsensual blood testing in all drunk-driving cases.” Id. at 1556. It concluded that a per se exigency did not exist in drunk-driving cases, and that exigencies must always be examined case-by-case based on the totality of the circumstances. Id. It stated that, absent a warrant, “ ‘the fact-specific nature of the reasonableness inquiry,’ demands that we evaluate each case of alleged exigency based ‘on its own facts and circumstances.’ ” Id. at 1559 (citations omitted).
*489 The Court acknowledged that BAC evidence is problematic because “an individual’s alcohol level gradually declines soon after he stops drinking,” and thus, “a significant delay in testing will negatively affect the probative value of the results.” Id. at 1561. But the Court dismissed this concern, finding that this exigency did not warrant departure from the careful case-by-case assessment of exigency that the Fourth Amendment requires. See id. The Court’s reasoning appears to have been based on two key facts. First, diminishing BAC is different from other destruction-of-evidenee scenarios. With some types of destructible evidence, law enforcement is truly confronted with a “now or never” situation, such as when an arrestee can immediately and permanently destroy the evidence. Id. at 1561. By contrast, BAC evidence “naturally dissipates over time in a gradual and relatively predictable manner.” Id. As such, experts can often work backwards from the BAC at the time the blood sample is taken to determine the BAC at the time of the alleged offense. Id. at 1563. Second, the Court noted that advances made in the forty-seven years since Schmerber allowed for more expeditious processing of warrants. Id. at 1561-62. For instance, the Federal Rules of Criminal Procedure permit magistrates to issue warrants over the telephone. Id[3]
In sum, the Court concluded that “[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.” Id. at 1561. Nevertheless, the Court noted that, in some cases, “exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process.” Id. at 1563.
Notably, in section III of the McNeely opinion, a plurality of the Court recognized that states have “a broad range of legal tools,” including implied-consent laws, “to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws.” Id. at 1566. The plurality went on to explain that implied-consent laws “impose significant consequences when a motorist withdraws consent; typically the motorist’s driver’s license is immediately suspended or revoked, and most States allow the motorist’s refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.” Id. at 1566. The plurality did not, however, mention criminal penalties for withdrawing consent. Therefore, although some courts have inferred a great deal from section III of the McNeely opinion, we do not find this section to be dispositive.
Because pre-McNeely Florida case law simply cited Schmerber, no Florida case specifically states what exception to the warrant requirement, if any, applies to breath-alcohol tests conducted immediately after a DUI arrest. As such, this is an issue of first impression. Courts in other jurisdictions have found that warrantless breath tests are justified under one of three potentially applicable exceptions to *490 the warrant requirement: (1) consent; (2) search incident to arrest; or (3) general reasonableness. We address each of these exceptions in turn. Ultimately, we hold that warrantless breath-alcohol tests are justified as reasonable under the Fourth Amendment, even though they do not fall under a specific categorical exception to the warrant requirement.
IV.
The State argues that the consent exception to the warrant requirement applies to the facts of this case; thus, we will address that potential exception first. Because Williams did not expressly consent to the breath test — in fact, he did exactly the opposite — the issue is whether he impliedly consented by obtaining a driver’s license in Florida and choosing to drive on Florida roads on the night in question. Under Florida law, any person who operates a motor vehicle within the State is “deemed to have given his or her consent to submit to an approved chemical test ... for the purpose of determining the alcoholic content of his or her blood or breath ....” § 316.1932(l)(a)l.a., Fla. Stat. (2013).
Although this appears to be an issue of first impression in Florida, several other states’ appellate and supreme courts have considered this issue, with varying results. The vast majority of courts have found that statutory implied consent is not equivalent to Fourth Amendment consent.[4] We agree.
Valid consent has long been recognized as a “jealously and carefully drawn” exception to the warrant requirement. See Georgia v. Randolph, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (quoting Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)). For a search based upon the consent exception to be valid, the consent must be given freely and voluntarily; it *491 cannot be the product of coercion. See, e.g., Norman v. State, 379 So.2d 643, 646 (Fla.1980) (citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)). Voluntariness is a question of fact to be determined by the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Additionally, consent for purposes of the Fourth Amendment is revocable and can be withdrawn at any time. See, e.g., Smith v. State, 753 So.2d 713, 715 (Fla. 2d DCA 2000).
On the other hand, statutory implied consent — at least according to the State’s position — is irrevocable. Even if Williams impliedly consented to the breath test when he received his driver’s license and chose to drive on Florida roads, he explicitly revoked that consent when he refused to submit to the breath test. Furthermore, statutory implied consent is not necessarily given freely and voluntarily. Thus, allowing implied-consent statutes to constitute a per se, categorical exception to the warrant requirement would make a mockery of the many precedential Supreme Court cases that hold that volun-tariness must be determined based on the totality of the circumstances.
We also find it improbable that the Supreme Court would mention implied-consent statutes in McNeely, yet completely ignore this important potential exception to the warrant requirement. In McNeely, the Court recognized that nearly every state had an implied-consent statute, including Missouri. See 133 S.Ct. at 1566. When McNeely was arrested, he was told that refusal to submit to the test would lead to the revocation of his driver’s license and could be used against him in future prosecutions. Id. at 1557. Still, the Court in McNeely assumed that he had not consented. See id. at 1556 (framing issue as “nonconsensual” blood testing). Allowing implied consent to constitute a per se warrant exception would devour the McNeely rule and contradict McNeely ’s general reasoning that these cases must be decided using a totality-of-the-circum.stances approach.
Therefore, we choose to follow the majority of courts, including all of the state supreme courts that have addressed this issue, in holding that' statutory implied consent does not constitute a per se exception to the warrant requirement. Williams did not necessarily consent to a breath test when he got behind the wheel of his car that night. To the extent that he did, he revoked that consent when he affirmatively refused the breath test.
At least one state supreme court has found warrantless breath tests to be permissible under the search-incident-to-arrest exception to the warrant requirement. See Minnesota v. Bernard, 859 N.W.2d 762 (Minn.2015). Although neither party raised this issue here, we believe it necessary to address this potentially applicable exception. We conclude that a warrantless breath test of Williams would not have been justified under the seareh-incident-to-arrest exception.
The seareh-incident-to-arrest exception allows police to search an arrestee’s person and “the space within an arrestee’s ‘immediate control.’ ” Arizona v. Gant, 556 U.S. 332, 335, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (citation omitted). The two rationales underlying this exception are officer safety and preservation of evidence. See id.; Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (“[I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons ... [and] for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or de *492 struction.”), abrogation on other grounds recognized by Davis v. United States, — U.S. -, 131 S.Ct. 2419, 2424, 180 L.Ed.2d 285 (2011).
Recently, the Minnesota Supreme Court, dealing with an issue almost identical to the one presented here, held that breath-alcohol tests were valid warrantless searches under the search-incident-to-arrest doctrine. See Bernard, 859 N.W.2d at 772. We disagree with the Minnesota Supreme Court’s conclusion and reasoning for several reasons.
First, and most importantly, breath-alcohol tests are not justified by either of the rationales for the exception. See Chimel, 395 U.S. at 762, 89 S.Ct. 2034 (“[T]he scope of a [warrantless] search must be ‘strictly tied to and justified by’ the circumstances which rendered its initiation permissible.” (citing Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))). Officers do not need to perform the tests for their own safety, nor do they need to perform the test to keep the suspect from destroying evidence. Unlike physical evidence, an arrestee is incapable of actively destroying the evidence of his or her BAC. Cf. Gant, 556 U.S. at 339, 129 S.Ct. 1710 (“ ‘[I]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.’ ” (citation omitted)); Schmerber, 384 U.S. at 769, 86 S.Ct. 1826 (observing that search-incident-to-arrest cases rest on fact that “there may be more immediate danger of concealed weapons or of destruction of evidence under the direct control of the accused ” (emphasis added)). To the extent that an exigent circumstance is presented by the evanescent nature of BAC, that reasoning was specifically rejected in McNeely. See generally 133 S.Ct. at 1552. Moreover, the concerns underlying the search-incident-to-arrest exception “have little applicability with respect to searches involving intrusions beyond the body’s surface.” Schmerber, 384 U.S. at 769, 86 S.Ct. 1826. See generally Bernard, 859 N.W.2d at 774-780, (Page, J., and Stras, J. dissenting jointly) (dissenting with well-reasoned analysis of why search-incident-to-arrest exception does not apply to breath tests). Thus, although Williams had been validly arrested prior to the request for a breath test, the search-incident-to-arrest exception is inapplicable.
Finally, it must be determined whether a warrantless post-arrest breath test is permissible under a general reasonableness test. Notably, while relying upon different rationales, not a single court that has dealt with a criminal refusal-to-submit statute, like the one here, has struck it down as unconstitutional. See Hawaii v. Yong Shik Won, 134 Hawai’i 59, 332 P.3d 661 (App.2014); Bernard, 859 N.W.2d 762; North Dakota v. Birchfield, 858 N.W.2d 302 (N.D.2015). Likewise, we conclude that section 316.1939, Florida Statutes, as applied to Williams, is constitutional. As previously discussed, we reject the Minnesota Supreme Court’s reasoning that the statute is constitutional because a warrant-less breath test is permissible as a search incident to arrest. Instead, we find that a warrantless breath test upon a person who has been arrested for driving under the influence is constitutional because it satisfies the general reasonableness requirement of the Fourth Amendment.
The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const, amend. IV. Although McNeely held that the diminishing nature of BAC did not justify a per se exception to the warrant requirement, it did not foreclose the possibility that a warrantless blood or breath test could sometimes be permissi *493 ble. Rather, it merely held that the court must examine the totality of the circumstances. After all, “the touchstone of the Fourth Amendment is reasonableness.” King, 133 S.Ct. at 1970.
Recently, the Supreme Court explained that some searches do not require a warrant, even if they do not fall under a specific, recognized exception:
In some circumstances, such as “[w]hen faced with special law enforcement needs,[5] diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.” Those circumstances diminish the need for a warrant, either because “the public interest is such that neither a warrant nor probable cause is required,” or because an individual is already on notice, for instance because of his employment, that some reasonable police intrusion on his privacy is to be expected. The need for a warrant is perhaps least when the search involves no discretion that could properly be limited by the “interpolation of] a neutral magistrate between the citizen and the law enforcement officer.”
Id. at 1969-70 (citations omitted). The Court further clarified: “To say that no warrant is required is merely to acknowledge that ‘rather than employing a per se rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.’ ” Id. at 1970 (citation omitted). Under this traditional reasonableness standard, the court must weigh “the promotion of legitimate governmental interests” against “the degree to which [the search] intrudes upon an individual’s privacy.” Id. (alteration in original) (quoting Wyoming v. Houghton, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)); accord United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (“The search of [the defendant] was reasonable under our general Fourth Amendment approach of ‘examining the totality of the circumstances,’ with the probation search condition being a salient circumstance.” (citation omitted)).
Here, balancing the State’s legitimate interest against the degree to which the breath-alcohol test would have intruded upon Williams’ privacy, we conclude that the warrantless test would have been reasonable under the Fourth Amendment. The State clearly has a legitimate interest in decreasing and prosecuting drunk driving. See Mich. Dep’t of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (“No one can seriously dispute the magnitude of the drunken driving problem or the States’ interest in eradicating it.”); Birchfield, 858 N.W.2d at 309. The State’s interest in “protecting lives, securing the safety of our public roads, and deterring drivers from operating vehicles while intoxicated is strong and compelling.” Yong Shik Won, 332 P.3d at 681.
Moreover, a breath test is minimally intrusive, which heavily favors finding it reasonable. See King, 133 S.Ct. at 1969 (“The fact that an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term.”). A breath-alcohol test is certainly less intrusive than the blood test at issue in McNeely. See Yong *494 Shik Won, 332 P.3d at 679 (“ ‘Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a. minimum of inconvenience or embarrassment. Further, breath tests reveal the level of alcohol in the [persons] bloodstream and nothing more, (quoting Skinner v. Ry. Labor Execs. Assn, 489 U.S. 602, 625, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989))).
Finally, Williams’ expectation of privacy was diminished, initially, because he was driving on a public road. Cf. California v. Carney, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (“[L]ess rigorous warrant requirements govern [automobile searches] because the expectation of privacy with respect to one’s automobile is significantly less than that relating to one’s home or office.... These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways.”). Although Williams’ .implied consent under the Florida Statutes does not necessarily equal consent for purposes of the Fourth Amendment, see supra, the implied-consent statute is still a factor to consider when determining the driver’s reasonable expectation of privacy. See Yong Shik Won, 332 P.3d at 681 (“[A] driver’s objective expectation of privacy is further diminished by the implied consent to breath testing imposed by statute, which gives a driver statutory notice that if arrested for [DUI], ‘some reasonable police intrusion on his [or her] privacy is to be expected.’ ” (quoting King, 133 S.Ct. at 1969)). Williams’ expectation of privacy was further diminished when he was arrested, based upon probable cause, for driving under the influence. See King, 133 S.Ct. at 1978 (“The expectations of privacy of an individual taken into police custody ‘necessarily [are] of a diminished scope.’ ” (citation omitted)).
jn sum¡ balancing Williams’ diminished eXpectation of privacy and the minimal invasiveness of the search against the state’s legitimate interest in curbing driv-jng un(jer the influence leads us to con-c¡U([e that a post-arrest warrantless breath-alcohol test would have been permissible undér the Fourth Amendment.
V.
In conclusion, Williams had no Fourth Amendment right to refuse the test because, under the totality of the circumstances, a warrantless breath-alcohol test would have been reasonable. Accordingly, no constitutional bar prohibits the State from criminally punishing Williams for refusing the test.
AFFIRMED.
SAWAYA and ORFINGER, JJ„ concur.

. § 316.1939, Fla. Stat. (2013).

. Camara, like this case, was arguably not an unconstitutional conditions doctrine case because no administrative right or privilege was involved. Id. Rather, the issue was whether it was permissible to punish a person criminally for exercising a constitutional right. Id.

. Although it is not our function to question the assumptions underlying Supreme Court decisions, we note that the practicality of securing expert witnesses in the typical driving-under-the-influence case is questionable because of availability and cost. In addition, technology has no doubt made the securing of warrants easier, but the suggestion that an arresting officer in a DUI case can realistically secure a search warrant expeditiously, especially in the middle of the night, is questionable. And, in Florida, by statute, a warrant is generally not available in a misdemeanor drunk driving case. See § 933.02, Fla. Stat. (2013); State v. Geiss, 70 So.3d 642 (Fla. 5th DCA 2011).

. See, e.g., Arizona v. Butler, 232 Ariz. 84, 302 P.3d 609, 613 (2013) (en banc) ("We hold now that, independent of [the implied-consent statute], the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw.”); Idaho v. Wulff, 157 Idaho 416, 337 P.3d 575, 581-82 (2014) (holding that Idaho’s implied-consent statute was not valid exception to warrant requirement, noting "irrevocable implied consent operates as a per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent. Voluntariness has always been analyzed under the totality of the circumstances approach.... ”); South Dakota v. Fierro, 853 N.W.2d 235, 242-43 (S.D.2014) ("The State’s argument that Fierro consented to the compelled, warrantless blood draw without any right to refuse pursuant to [the implied-consent statute] does not fit within the consent exception to the warrant requirement. The court's findings of fact confirm that Fierro did not consent to the withdrawal of her blood.... The record demonstrates that Fier-ro verbally and physically refused to provide a sample.... These actions taken in their totality can hardly be taken as 'consent' by constitutional standards, and furthermore, even if consent were actually given, Fierro verbally and physically revoked such consent by her actions.” (footnote omitted)); Tennessee v. Wells, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356, *13 (Tenn.Ct.Crim.App. Oct. 6, 2014); Texas v. Villarreal, No. PD-0306-14, 2014 WL 6734178, *1 (Tex.Ct.Crim.App. Nov. 26, 2014) (“[W]e conclude that the warrant-less, nonconsensual testing of a DWI suspect’s blood [pursuant to the implied-consent and mandatory blood-draw statutes] does not categorically fall within any recognized exception to the Fourth Amendment's warrant requirement.... ”). But see Hawaii v. Yong Shik Won, 134 Hawai’i 59, 332 P.3d 661, 680-81 (App.2014) (suggesting, without holding, that implied consent can be valid Fourth Amendment consent); Rowley v. Virginia, 48 Va.App. 181, 629 S.E.2d 188, 191 (2006) (holding that search of defendant was valid under consent exception to warrant requirement because defendant, like all drivers, consented to submit breath samples by exercising legal privilege of driving).

. The "special needs” exception, which allows-for example-breath-alcohol tests at "check points,” does not apply in this case because that exception requires that the main purpose of the search not be a "general interest in crime control.” See, e.g., Lynch v. City of New York, 589 F.3d 94, 100 (2d Cir.2009) (citing City of Indianapolis v. Edmond, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)).