SLIP OPINION Cite as 2016 Ark. App. 182

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–15–673

| | |
|---|---|
| MATTHEW AARON BURR<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** March 30, 2016<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CR–2014-1499-1]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED; REMANDED FOR CORRECTION OF SENTENCING ORDER |

**RITA W. GRUBER, Judge**

Matthew Aaron Burr was charged in the Benton County Circuit Court with first-offense driving while intoxicated, refusal to submit to a chemical test, and failure to use a turn signal. He waived his right to trial by a jury and filed a motion to suppress all evidence or statements he made as a result of a traffic stop that led to his arrest. At the conclusion of a combined suppression hearing and trial, he asked that Arkansas Code Annotated section 5-65-202 and subsection –205(a)(2) (Supp. 2011) be declared unconstitutional "as applied" because they are in direct conflict with the Fourth Amendment as applied in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). The circuit court denied the motion to suppress and found him guilty of all charges.

In his sole point on appeal, Burr contends that the circuit court erred in not finding Arkansas Code Annotated section 5-65-205(a)(2), entitled "Refusal to submit to a chemical

test," unconstitutional. The statute, a part of our criminal code, is codified under the chapter on driving while intoxicated and the subchapter on chemical analysis of body substances. *See also* Ark. Code Ann. § 5-65-202, entitled "Implied consent."

Burr asks that his conviction for refusal to take chemical tests be reversed and dismissed on the basis of unconstitutionality and that his DWI conviction be reversed because his refusal to take a chemical test was used to show consciousness of guilt. He lists the following extraordinary issues in his brief: federal constitutional interpretation; substantial public interest; significant issue needing clarification or development of the law, or overruling of precedent; and significant issue concerning construction of statute, ordinance, rule, or regulation. He notes that three related drunk-driving cases involving blood or breath tests are now pending before the United States Supreme Court: *Birchfield v. North Dakota*, 858 N.W.2d 302 (N.D.), *cert. granted*, 136 S. Ct. 614 (2015); *Beylund v. Levi*, 859 N.W.2d 403 (N.D.), *cert. granted*, 136 S. Ct. 614 (2015); and *Bernard v. Minnesota*, 859 N.W.2d 762, *cert. granted*, 136 S. Ct. 615 (2015). The Court's docket listing for consolidation of these cases states that each case presents the same question: "Whether, in the absence of a warrant, a State may make it a crime for a person to refuse to take a chemical test to detect the presence of alcohol in the person's blood." Additionally, the docket shows that the cases are set for oral argument on April 20, 2016.

The relevant statutes in this appeal are Arkansas Code Annotated sections 5-65-202

 

and 5-65-205 (Supp. 2011).[1]  Section 5-65-202(a), *Implied consent*, provides in part that

> [a]ny person who operates a motor vehicle or is in actual physical control of a motor vehicle in this state is deemed to have given consent, subject to the provisions of § 5-65-203, to one (1) or more chemical tests of his or her blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his or her breath or blood if:
> . . .
>
> (3) At the time the person is arrested for driving while intoxicated, the law enforcement officer has reasonable cause to believe that the person, while operating or in actual physical control of a motor vehicle, is intoxicated or has an alcohol concentration of eight hundredths (0.08) or more in the person's breath or blood.

Ark. Code Ann. § 5-65-202(a).  Section 5-65-205(a)(1), *Refusal to submit to a chemical test*, directs that if an arrestee refuses to submit to a chemical test "as provided in § 5-65-202, no chemical test shall be given," but the arrestee's license shall be seized.  Arkansas Code Annotated section 5-65-205(a)(2) specifies that refusal to submit to a chemical test "is a strict liability offense and is a violation" under Arkansas law.

Officer Eric Lyle of the Pea Ridge Police Department testified that the following events began shortly after midnight on March 22, 2013.  He observed a truck make a "yield turn" at a high rate of speed, followed it, observed it turn without signaling, and activated his lights.  The truck braked but then accelerated and kept going.  Lyle activated his siren and spotlight.  The driver, Burr, turned to look at Lyle and waved, but did not pull over.  With lights, siren, and spotlight on, Lyle continued following the truck, driving approximately ten miles an hour over the speed limit of 25.  Burr pulled into the driveway of a home that was

---

[1]The statutes have since been amended, but the amendments are not relevant to the current appeal.

his ultimate destination approximately a mile and a half later.

Lyle approached with his gun drawn, ordered Burr out of the truck, and told him to place his hands on it. Burr complied and was handcuffed. Lyle noticed that a strong odor of intoxicants was emanating from Burr; his eyes were bloodshot and watery; and he was wearing a t-shirt, pajama pants, and no shoes. Burr said that he had not pulled over because he "didn't do anything wrong." Lyle noticed that his speech was slow and slurred. When asked where he was going, Burr responded, "Here"; when asked whether he had drunk anything, Burr replied, "No." Lyle attempted to administer a portable breath test; Burr did not cooperate and merely pretended to blow into the device, saying that he could not do it because he had a "blown" eardrum. Lyle could not conduct other field-sobriety tests because the area was unsuitable. Lyle arrested Burr for driving while intoxicated ("DWI") and failing to yield to an emergency vehicle.[2]

Lyle placed Burr in the back of his patrol car and decided to give him "the benefit of the doubt" that his eardrum was blown and take him to the hospital for a blood test. Lyle orally reviewed the implied-consent form with Burr as he sat in the back of the unit, and Burr responded that he did not think the officer could tow his truck. When asked more than five times about the blood test, Burr responded, "I guess so, I don't know" at first and then did not respond at all.[3] Lyle took him to the sheriff's office instead.

---

[2]The record before us does not show a disposition of this charge.

[3]The circuit court discounted Burr's testimony that he signed the form in the back of the officer's patrol car and consented to the blood draw.

SLIP OPINION

Lyle conducted an inventory search of the truck prior to its being towed from the scene; he discovered an empty six-pack and six empty beer bottles in it. In the sally port at the sheriff's office, Lyle asked Burr if he would submit to field-sobriety tests. Burr replied that he would. Lyle testified that Burr failed all the tests that were administered—the horizontal-gaze-nystagmus, the walk-and-turn, and the one-leg-stand test—and that failure of the first two indicated intoxication. Lyle then took Burr to the blood-alcohol-content room to begin a 20-minute observation of him prior to administration of the BAC test and read Burr his implied-consent rights from a form. On the form, Burr acknowledged being read his rights and agreed to take the breath test. Lyle did not offer him a urine or blood test. After 20 minutes, Burr blew into the BAC machine three times but failed to "follow directions" and did not give enough of a sample to register. Although the form indicated that Burr requested another test at his own expense, no other test was administered because Lyle understood it to be available only after he had "taken the officer's test." Burr was booked at the jail, and Lyle overheard him tell a deputy that he would beat the charge like he had before.

Burr asks that we overrule *Tiller v. State*, 2014 Ark. App. 431, 439 S.W.3d 705, in which the appellant argued that she had the constitutional right to refuse to take a breath test because it was a warrantless search in contravention of the Fourth Amendment and in which we held that section 5-65-202 is an exception to the warrant requirement. Burr argues that the nonrevocableness of our implied-consent law is problematic and that state statutes cannot allow for the criminalization of a person's exercising a federal constitutional right under the

5

Fourth Amendment. He also argues that an additional problem in his case is that he did not have the physical ability to perform the breath test.

We agree with the State that not all of Burr's arguments are preserved for appellate review. He claimed in the circuit court that our statutes violate *McNeely*, 133 S. Ct. 1552, and that he had a right to withdraw his implied consent to any chemical testing under the statute and the Fourth Amendment. He also argued that the implied- consent statute could not supply the consent necessary under the Fourth Amendment, notwithstanding our holding to the contrary in *Tiller*, 2014 Ark. App. 431, 439 S.W.3d 705.[4] He did not argue, as he does on appeal, that the statute violated due process, *see State v. Trahan*, 870 N.W.2d 396 (Minn. App.), *review granted*, No. A13-0931 (Minn. 2015); that criminalizing the exercise of a constitutional right is impermissible under cases such as *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967); or that implied consent to a breath test is otherwise "unreasonable" under the Fourth Amendment. We will consider on appeal only specific constitutional arguments that were raised and developed below. *E.g.*, *Raymond v. State*, 354 Ark. 157, 162, 118 S.W.3d 567, 571 (2003). Because appellant did not argue impermissible criminalization of the exercise of a constitutional right, due process, or general unreasonableness below, the claims are not preserved, and we need not address them. Nor will we consider his undeveloped assertion that his physical inability to take the breath test due to a medical problem is relevant to his constitutional claim. We find no merit to Burr's

---

[4] Although Burr argues on appeal that *Tiller* should be overruled, *Tiller* did not involve the constitutionality of our refusal–to–submit statute, the issue in the present case. We find it unnecessary to revisit our decision.

remaining arguments.

We apply familiar standards when considering a constitutional challenge to a statute. Statutes are presumed constitutional, and the burden of proving otherwise is on the party challenging them. Because of their presumption of constitutionality, statutes should not be deemed unconstitutional unless the conflict with the constitution is "clear and unmistakable." *Akers v. State*, 2015 Ark. App. 352, at 5, 464 S.W.3d 483, 487. In accordance with these governing standards, we reject Burr's constitutional argument.

Burr's reliance on *McNeely* is mistaken. There, after an arrestee in a DWI case refused to consent to a blood draw for purposes of measuring his blood-alcohol content, officers had his blood drawn without obtaining a warrant. *McNeely*, 133 S. Ct. at 1556–57. The narrow issue in the case was "whether the natural dissipation of alcohol in the bloodstream establishes a per se exigency that suffices on its own to justify an exception to the [Fourth Amendment's] warrant requirement for nonconsensual blood testing in drunk-driving cases." *Id.* at 1558. The Court held that the answer was no and that exigency had to be decided on a case-by-case basis. It also noted that because the case had been argued "on the broad proposition that drunk-driving cases present a per se exigency" the Court had not been provided with "an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant." *Id.* at 1568.

*McNeely* does not stand for the proposition that a warrant is always required in nonexigent circumstances in order to obtain a chemical sample from an arrestee who has not

expressly consented. Even if *McNeely* did hold as Burr alleges, the Arkansas statutes he challenges would not run afoul of it. In contrast to the nonconsensual blood draw of *McNeely*, section 5-65-205(a)(1) prohibits administering a chemical test when an arrestee explicitly refuses, and no compelled chemical testing was administered after Burr refused. Moreover, to the extent that *McNeely* spoke on the issue litigated here, it did so contrary to Burr's claim. A plurality of the Court noted the availability of a "broad range of legal tools . . . to secure BAC evidence" other than warrantless blood draws, including "implied consent laws" in all 50 states that "require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense[ ]" and the adverse inference that could be drawn in subsequent prosecutions from the refusal to submit to such tests. *Id*. at 1566 (plurality). In sum, sections 5-65-202(a)(3) and 5-65-205(a)(2) do not clearly and unmistakably conflict with the holding of *McNeely*, and we reject Burr's constitutional challenge premised on it.

Were we to reach Burr's Fourth Amendment argument regarding reasonableness, we would still affirm. "The touchstone of the Fourth Amendment is reasonableness," *United States v. Knights*, 534 U.S. 112, 118 (2001), and determining whether a search is reasonable requires an examination of the totality of the circumstances, with an assessment of "the degree to which it intrudes upon an individual's privacy and . . . the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (citations and quotations omitted).

Burr cites *Williams v. State*, 167 So. 3d 483 (Fla. Dist. Ct. App.), *review granted*, No.

8



SC15-1417, 2015 WL 9594290 (Fla. Dec. 30, 2015), a case similar to his because Williams refused to submit to a warrantless breath test to determine his blood-alcohol content and was convicted under Florida's refusal-to-submit statute. Williams argued that Florida's refusal-to-submit statute was unconstitutional as applied. 167 So. 3d at 485–86. The District Court of Appeal of Florida, Fifth District, held that it is not unconstitutional to punish a person criminally for refusing to submit to a breath-alcohol test and that a warrantless breath-alcohol test "is constitutional because it satisfies the reasonableness requirement of the Fourth Amendment." 167 So. 3d at 492. The court balanced the State's legitimate interest in decreasing and prosecuting drunk driving against the intrusion on Williams's privacy. 167 So. 3d at 493. The court found that the State had a compelling interest in "protecting lives, securing the safety of our public roads, and deterring drivers from operating vehicles while intoxicated" and that breath tests are minimally intrusive and reveal nothing more than the level of alcohol in a person's bloodstream. 167 So. 3d at 493–94 (internal citation omitted). It found that Williams had a diminished expectation of privacy, in part because he was driving an automobile on a public road and had been arrested based on probable cause for driving under the influence. 167 So. 3d at 494. Under this balancing test, the court concluded that "a post-arrest warrantless breath-alcohol test would have been permissible under the Fourth Amendment." Because a warrantless breath test would have been reasonable under the totality of the circumstances, the court concluded that Williams had no Fourth Amendment right to refuse the test and that the State was not constitutionally barred from criminally punishing him for the refusal.

9

In the present case, Burr asserts that "the Arkansas implied consent law, as it applies to criminalizing the refusal of a person for invoking their Fourth Amendment rights, should be declared unconstitutional 'as applied.'" Apparently distinguishing his case from *Williams*, he argues that because of the medical problem with his ears, he did not have the physical ability to blow into the breath-test machine without suffering serious pain.

Section 5-65-202(a)(3) authorizes chemical testing upon arrest only when there is reasonable cause to believe that the driver has been operating a vehicle while intoxicated or with an alcohol concentration in the blood or breath in excess of .08 percent. Thus, a person is already in custody on a finding of reasonable cause when a test is authorized and arrestees have a reduced expectation of privacy. *E.g.*, *Maryland v. King*, 133 S. Ct. 1958, 1978 (2013). One of the tests that the circuit court concluded appellant failed to submit to was a breath test. Although a breath test is a search, it is not a particularly intrusive one and does not involve risk to an arrestee. *See, e.g.*, *id*. at 1969, 1979 (considering intrusiveness and threat to safety and health of a test in determining reasonableness); *cf. McNeely*, 133 S. Ct. at 1565 (plurality) (emphasizing the "compelled intrusion into the human body" from the blood draw that was at issue). Moreover, the United States Supreme Court has long held that drivers have a diminished expectation of privacy given the pervasive regulation of motorists. *See, e.g.*, *New York v. Class*, 475 U.S. 106, 112–13 (1986). That privacy is even further reduced in light of the notice to drivers in section 5-65-202(a)(3) that they are subject to chemical testing if they are arrested for DWI. The United States Supreme Court also has repeatedly recognized that the states have a compelling interest in combating drunk driving. *See, e.g.*, *Mich. Dep't of State*

*Police v. Sitz*, 496 U.S. 444, 451 (1990).

In view of Burr's arrest on reasonable cause, the reduced expectation of privacy as a motorist and an arrestee, the minimal intrusiveness of a breath test, and the compelling interest in combating drunk driving, it simply cannot be said that the implied-consent statute clearly and unmistakably violates the Fourth Amendment. *See, e.g.*, *State v. Birchfield*, 858 N.W.2d 302, 309–10 (N.D.), *cert. granted*, 136 S. Ct. 614 (2015); *see also, e.g.*, *Beylund v. Levi*, 859 N.W.2d 403, 412–14 (N.D.), *cert. granted*, 136 S. Ct. 614 (2015). We reject Burr's request to reverse his conviction for refusal to take chemical tests on the basis of unconstitutionality as applied. We also reject his request to reverse and dismiss his DWI conviction on the basis that his refusal to take a chemical test was used to show consciousness of guilt.[5] He has not shown that Arkansas Code Annotated section 5-65-205 is unconstitutional, and the circuit court properly considered his refusal to submit along with other evidence of his DWI. *See McNeely*, 133 S. Ct. at 1566 (plurality) (noting that an adverse inference could be drawn in subsequent prosecutions from the refusal to submit to such tests).

We note a scrivener's error in the circuit court's sentencing order, which shows a finding of guilty on Arkansas Code Annotated section "5-65-205 Violation of Implied Consent Law." This is a confusion of code sections and titles. *See* Ark. Code Ann. §§ 5-65-205, entitled *Refusal to submit to a chemical test*, and 5-65-202, entitled *Implied consent*. The Pea Ridge Police Department's citation order correctly lists the offense as 5-65-205, *Refusal to Submit*, as does the finding of guilt shown on the district court's worksheet. Additionally, the

---

[5]It is not entirely clear whether the circuit court also considered the implied-consent statute in finding Burr guilty of DWI.



circuit court orally pronounced Burr guilty of refusal to submit at the conclusion of his trial.

We remand to the circuit court to correct the sentencing order to show a conviction under

section 5-65-205, "Refusal to submit to a chemical test."

Affirmed; remanded for correction of sentencing order.

ABRAMSON and VAUGHT, JJ., agree.

*Norwood & Norwood, P.A.*, by: *Doug Norwood* and *Alison Lee*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.