IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE OF FLORIDA,

       Appellant/Cross-Appellee,

v.                                                          Case No.  5D14-1654

WADE F. LILES,

       Appellee/Cross-Appellant.

_____/

Opinion filed April 8, 2016

Appeal from the Circuit Court
for Orange County,
Michael Murphy, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kristen L. Davenport,
Assistant Attorney General, Daytona
Beach, for Appellant/Cross-Appellee.

William R. Ponall and Michael J. Snure,
of Snure & Ponall, P.A., Winter Park,
for Appellee/Cross-Appellant.

_____

STATE OF FLORIDA,

       Appellant,

v.                                                          Case No.  5D15-405

JOHN NATHAN WILLIS,

       Appellee.

_____/

Appeal from the Circuit Court
for Orange County,
Timothy R. Shea, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kristen L. Davenport,
Assistant Attorney General, Daytona
Beach, for Appellee.

James S. Purdy, Public Defender, and
Jeri Delgado, Nancy Ryan and Anne
Moorman Reeves, Assistant Public
Defenders, Daytona Beach, and Aaron
D. Delgado, of Damore, Delgado,
Romanik & Rawlins, Daytona Beach, for
Appellee.

ORFINGER, J.

The State of Florida appeals two orders suppressing the results of warrantless

blood draws taken from Wade F. Liles and John Nathan Willis during drunk driving

investigations involving separate traffic crash fatalities.[1]  In both cases, the trial courts

found that, pursuant to the United States Supreme Court's holding in Missouri v.

McNeely, 133 S. Ct. 1552 (2013), the blood draw results were inadmissible because the

blood was obtained without a warrant, consent, or any other recognized exception to the

warrant requirement.  The State argues that section 316.1933(1)(a), Florida Statutes

(2011), is a general exception to the warrant requirement that applies even after

McNeely.  We disagree, but reverse based on the good-faith exception set forth in

United States v. Leon, 468 U.S. 897 (1984).

Wade Liles and John Willis were involved in separate fatal traffic crashes in 2011

and 2012.  While investigating these traffic fatalities, the investigating officers saw

---

[1] We have consolidated these cases for purposes of disposition only.

2

indications that Liles and Willis may have been under the influence of alcohol when the crashes occurred and requested blood draws pursuant to section 316.1933(1)(a), Florida Statutes (2011). Both Liles and Willis initially refused. However, they ultimately complied with the warrantless blood draws after being told that law enforcement would forcibly take their blood, if necessary. After Liles and Willis were arrested and charged, both filed motions to suppress the results of the warrantless blood draws. Both trial courts granted the motions, finding that McNeely either required a warrant or exigent circumstances, and that the Leon good-faith exception to the exclusionary rule did not apply.

The review of a trial court's ruling on a motion to suppress is a mixed question of law and fact that uses a two-step approach. We defer to the trial court's findings of fact, provided that they are supported by competent, substantial evidence, but review de novo a trial court's application of law to the historical facts. E.g., Delhall v. State, 95 So. 3d 134, 150 (Fla. 2012); Connor v. State, 803 So. 2d 598, 605 (Fla. 2001); Ferguson v. State, 41 Fla. L. Weekly D62, D62 (Fla. 5th DCA Dec. 31, 2015).

The Fourth Amendment protects against unreasonable searches and seizures. Amend. IV, U.S. Const. A blood draw conducted at the direction of the police is a search and seizure under the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 767 (1966); State v. Geiss, 70 So. 3d 642, 646 (Fla. 5th DCA 2011). To comply with the Fourth Amendment, law enforcement officers must obtain a warrant or consent for a blood draw, or there must be some other exception to the warrant requirement. See Kilburn v. State, 54 So. 3d 625, 627 (Fla. 1st DCA 2011). When, as here, no warrant is obtained, "[t]he state has the burden to prove that an exception to the warrant

3

requirement applies." Id. To satisfy that burden, the State argues that the warrantless searches in these cases were reasonable under either of two exceptions: consent or exigent circumstances.

## Consent

A search conducted without a warrant issued upon probable cause is per se unreasonable under the Fourth Amendment, subject only to a few well-established exceptions. Katz v. United States, 389 U.S. 347, 357 (1967). One of the well-established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. Davis v. United States, 328 U.S. 582, 593-94 (1946). The State argues that the warrantless blood draws here should be upheld under the consent exception to the warrant requirement.

The State concedes that Liles and Willis did not give actual consent to the blood draws. However, it argues that both blood samples were properly drawn on the authority found in section 316.1933(1)(a), Florida Statutes (2011), the mandatory blood-draw provision of Florida's implied consent statutory scheme,[2] which provides as follows:

---

[2] This Court and other Florida courts have consistently recognized that section 316.1933 is part of the trilogy of statutes comprising the implied consent statutory scheme. See, e.g., State v. Kleiber, 175 So. 3d 319, 321 (Fla. 5th DCA 2015); State v. Murray, 51 So. 3d 593, 595 n.1 (Fla. 5th DCA 2011); Kurecka v. State, 67 So. 3d 1052, 1060 (Fla. 4th DCA 2010); State, Dep't of Highway Safety & Motor Vehicles v. Boesch, 979 So. 2d 1024, 1026 n.1 (Fla. 3d DCA 2008); Bruch v. State, 954 So. 2d 1242, 1244 (Fla. 4th DCA 2007). Under this statutory scheme, section 316.1932 provides that any person who drives a motor vehicle is deemed to have given consent to blood alcohol testing if the driver is lawfully arrested on suspicion of a drunk driving offense. § 316.1932, Fla. Stat. (2011). Section 316.1933, Florida Statutes (2011), requires a police officer to obtain a driver's blood when the officer has probable cause to believe an impaired driver has caused death or serious injury to a human being and to use reasonable force if necessary. Finally, section 316.1934, Florida Statutes (2011), sets

4

If a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, a law enforcement officer shall require the person driving or in actual physical control of the motor vehicle to submit to a test of the person's blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or any substance controlled under chapter 893. The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner. Notwithstanding s. 316.1932, the testing required by this paragraph need not be incidental to a lawful arrest of the person.

In Williams v. State, 167 So. 3d 483, 490-91 (Fla. 5th DCA 2015), review granted, No. SC15-1417, 2015 WL 9594290 (Fla. Dec. 30, 2015), this Court recognized that statutory implied consent was not equivalent to Fourth Amendment consent, explaining that valid consent has long been recognized as a "jealously and carefully drawn" exception to the warrant requirement and for a search based upon consent to be valid, it must be freely and voluntarily given and cannot be the product of coercion. Further, statutory implied consent laws do "not constitute a per se exception to the warrant requirement." Id. at 491; see also State v. Fierro, 853 N.W.2d 235, 237 (S.D. 2014) (indicating that implied-consent statute did not constitute stand-alone exception to warrant requirement). Based on Williams, even if we agree with the State that Liles and Willis impliedly consented to the blood draws by driving, they explicitly revoked that consent when they refused to submit to the blood draws. Because Liles and Willis did

forth various legal presumptions associated with different blood alcohol levels and the testing methods. The mandate found in section 316.1933 is a directive to law enforcement to perform the test. See State v. Serrago, 875 So. 2d 815, 818 (Fla. 2d DCA 2004) (citing State v. Webb, 753 So. 2d 145 (Fla. 3d DCA 2000)).

not consent to the blood draws, we conclude that the warrantless blood searches were not authorized by the consent exception.

Exigency

The State next contends that exigent circumstances exists to justify the warrantless blood draws. This exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." McNeely, 133 S. Ct. at 1558 (quoting Kentucky v. King, 563 U.S. 452, 460 (2011)). Applying that exception, the United States Supreme Court upheld the constitutionality of a warrantless blood draw in Schmerber when the officer reasonably believed that the delay involved in securing a warrant would result in the dissipation of alcohol in a driver's blood. 384 U.S. at 772. Forty-seven years later, in McNeely, the Supreme Court clarified Schmerber, holding that the natural metabolization of alcohol in the bloodstream does not create a per se exigency justifying warrantless, nonconsensual blood testing in all DUI cases, though it is a relevant consideration in determining if exigent circumstances exist. 133 S. Ct. at 1568. Hence, "[a]fter McNeely, law enforcement officers [are] no longer categorically permitted to obtain a suspect's blood sample without a warrant simply because the alcohol [is] leaving the suspect's blood stream." Commonwealth v. Duncan, No. 2013-SC-000742-DG, 2015 WL 2266474, at *5 (Ky. May 14, 2015).

In drunk driving investigations, the Fourth Amendment mandates that officers obtain a warrant unless excused by an exception to the warrant requirement. McNeely, 133 S. Ct. at 1561. The McNeely Court observed that a warrantless search in exigent circumstances is reasonable when "there is compelling need for official action and no

6

time to secure a warrant." Id. at 1559 (quoting Michigan v. Tyler, 436 U.S. 499, 509 (1978)). However, there is no general justification for applying the exigent circumstances exception when "officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search." Id. at 1561.[3] Here, as both trial courts found, the State failed to present sufficient evidence that exigent circumstances existed to support the warrantless blood draws under the totality of the circumstances in either case. Indeed, the State made no effort to do so, as the blood draws were based solely on the officers' reliance on section 316.1933(1). See McNeely, 133 S. Ct. at 1567 (explaining because state had relied on per se approach, "the arresting officer did not identify any other factors that would suggest he faced an emergency or unusual delay in securing a warrant").

We decline to adopt the State's argument that McNeely does not apply in these cases and that the Schmerber rule is as broad as previously believed. After McNeely, law enforcement must obtain a warrant or later show that exigent circumstances prevented them from doing so. Following McNeely, we must read section 316.1933, Florida Statutes, as a directive to law enforcement to obtain blood samples in serious and deadly crashes when probable cause exists to suggest impaired driving. To comply with McNeely, the statute must assume the blood draw will be obtained with a warrant, absent consent or proof of exigent circumstances. Cf. State v. Won, No. SCWC-12-

---

[3] The Court reiterated that the question of the reasonableness of a warrantless search should be answered on a case-by-case basis considering the totality of the circumstances. McNeely, 133 S. Ct. at 1563. McNeely identified certain facts that establish whether an exigent circumstance exists, including: natural dissipation of alcohol from the body, the time to seek out a magistrate to review a warrant, a DUI involving a crash where an investigation must be conducted, and the availability of electronic or telephonic warrants. Id. at 1560-62.

0000858, 2015 WL 10384497 (Haw. Nov. 25, 2015) (discussing McNeely, and stating that pursuant to statute, warrantless blood alcohol test may be required from driver involved in collision resulting in injury or death so long as: (1) police have probable cause to believe that driver has committed DUI offense and that blood sample will evidence that offense; (2) exigent circumstances are present; and (3) sample is obtained in reasonable manner).

<u>Good Faith and the Exclusionary Rule</u>

Although we conclude that neither the consent nor exigent circumstances exceptions applies to these cases, we nonetheless reverse the suppression of the blood draws based on the police officers' good-faith reliance on section 316.1933. The exclusionary rule is a judicially-created remedy adopted to protect Fourth Amendment rights by deterring illegal searches and seizures. <u>Davis v. United States</u>, 131 S. Ct. 2419, 2426 (2011). It is intended to deter police misconduct, not to remedy the prior invasion of a defendant's constitutional rights. <u>Montgomery v. State</u>, 69 So. 3d 1023, 1033 (Fla. 5th DCA 2011). Because the primary purpose of the exclusionary rule is to "deter future unlawful police conduct," <u>Stone v. Powell</u>, 428 U.S. 465, 484 (1976), the rule has not been applied in certain circumstances, such as when an officer acts in objectively reasonable reliance on a subsequently invalidated statute, <u>Illinois v. Krull</u>, 480 U.S. 340, 355 (1987).

Applying the objective standard of reasonableness mandated by <u>Krull</u> to the facts presented here, we conclude that, before <u>McNeely</u>, it was reasonable for the officers to have a good-faith belief in the constitutional validity of a warrantless blood draw authorized by section 316.1933(1)(a). <u>See, e.g.</u>, <u>State v. Bender</u>, 382 So. 2d 697, 698

8

(Fla. 1980) ("There is no constitutional impediment to a blood alcohol analysis with or without consent where probable cause has been established."); State v. McInnis, 581 So. 2d 1370, 1373 (Fla. 5th DCA 1991) (recognizing no constitutional right not to have blood drawn for testing by brute force and against suspect's will); see also State v. Langsford, 816 So. 2d 136, 138-39 (Fla. 4th DCA 2002) (holding forcible blood extraction from defendant does not violate Fourth Amendment when defendant is under arrest for DUI provided there is probable cause to arrest defendant for DUI, and blood is extracted in reasonable manner by medical personnel, pursuant to medically-approved procedures).

Exclusion of the blood in these two cases would have no deterrent effect on future police misconduct. See United States v. Calandra, 414 U.S. 338, 347 (1974) (recognizing that exclusionary rule's primary purpose is to deter future unlawful police conduct, not repair it, and thus, not designed to safeguard personal constitutional right of party aggrieved); United States v. Master, 614 F.3d 236, 243 (6th Cir. 2010) (noting that Supreme Court's recent jurisprudence weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless officers engaged in deliberate, reckless, or grossly negligent conduct); Brown v. State, 24 So. 3d 671, 681 (Fla. 5th DCA 2009) ("To apply the exclusionary rule in this case cannot possibly deter police because they did exactly what they were trained to do based on what we (judges) told them was appropriate."). Instead, applying the exclusionary rule in this case would deprive the State of the benefit of evidence obtained as a result of the officers' good-faith conduct. Leon, 468 U.S. at 907-08 ("Particularly when law enforcement officers have acted in

9

objective good faith . . ., the magnitude of the benefit conferred on such guilty defendants [by the exclusionary rule] offends basic concepts of the criminal justice system.").

Accordingly, although we conclude that Liles and Willis both suffered a Fourth Amendment violation, based on the good-faith exception, the trial courts should not have suppressed the results of warrantless blood draws taken before the issuance of McNeely.[4] See, e.g., People v. Harrison, No. 5–15–0048, 2016 WL 683829 (Ill. App. Ct. Feb. 18, 2016) (holding that good-faith exception applied to preclude suppression of blood draw results because at time of warrantless, nonconsensual blood draw, McNeely had yet to be decided and binding precedent allowed for such draws in all DUI cases); State v. Lindquist, 869 N.W.2d 863, 877-78 (Minn. 2015) (holding that results of defendant's blood test were admissible under good-faith exception, where officer relied on and complied with binding appellate precedent, which was later abrogated, that allowed warrantless blood draw when there was probable cause to believe that defendant was intoxicated when she caused motor vehicle accident); Byars v. State, 336 P.3d 939, 947-48 (Nev. 2014) (holding that admission of blood draw evidence was not erroneous because, pre-McNeely, officer had reasonable good-faith belief in constitutional validity of warrantless blood draw); State v. Foster, 856 N.W.2d 847, 859-60 (Wis. 2014) (holding that good-faith exception to exclusionary rule applied to

---

[4] Liles's cross-appeal, challenging whether there was probable cause for the warrantless blood draw pursuant to section 316.1933(1)(a), is without merit. See Dep't of Highway Safety & Motor Vehicles v. Rose, 105 So. 3d 22, 24 (Fla. 2d DCA 2012) (recognizing that determination of probable cause to arrest for DUI is based on several factors, including odor of alcohol on driver's breath as well as defendant's slurred speech, lack of balance or dexterity, flushed face, bloodshot eyes, admissions, and poor performance on field sobriety exercises).

evidence obtained as result of warrantless, nonconsensual blood draw following arrest of defendant on suspicion of operating vehicle while under influence of intoxicant since police officers conducting blood draw acted in objectively reasonable belief that their conduct did not violate Fourth Amendment; at time of draw, Supreme Court had not yet announced McNeely rule); accord State v. Taylor, 79 So. 3d 876, 878 (Fla. 4th DCA 2012) (holding that good-faith exception applied to police officer's search of defendant's vehicle where search occurred prior to issuance of Supreme Court's decision that made such search unlawful); Montgomery, 69 So. 3d at 1033 (holding that, although defendant was stopped based on unconstitutional noise ordinance, good-faith exception applied to drug evidence recovered because ordinance was not held unconstitutional until after stop was made and officer's reliance on statute was objectively reasonable; exclusion of drugs found in defendant's car would have had no deterrent effect on future police misconduct and would have deprived state of benefit of evidence obtained as result of officer's good-faith conduct).

REVERSED AND REMANDED.

TORPY and EDWARDS, JJ., concur.