# Third District Court of Appeal

## State of Florida

Opinion filed January 17, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2167
Lower Tribunal No. 08-23160
_____


**Juan Aguilar,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Jeffrey S. Weiner, P.A., and Jeffrey S. Weiner, Annabelle H. Nahra, and Diego Weiner, for appellant.

Pamela Jo Bondi, Attorney General, and Michael W. Mervine, Assistant Attorney General, for appellee.


Before LAGOA, SALTER, and EMAS, JJ.*

LAGOA, J.

* Judge Emas did not participate in oral argument.

Juan Aguilar ("Aguilar") appeals his conviction and sentence for various driving under the influence ("DUI") crimes arising out of a multi-vehicle accident that resulted in the death of one person at the scene and serious bodily injury to two others. Aguilar primarily challenges the admission of the results of a blood alcohol test performed on blood samples warrantlessly obtained from him at Ryder Trauma Center following his transport there for his injuries. Because we find no error in the admission of the blood test results, we affirm as to Counts I, III, and V. We reverse, however, with respect to Counts II and IV based on the State's proper concession of a violation of the double jeopardy clause. We affirm as to all other issues raised by Aguilar.

## I.    FACTUAL AND PROCEDURAL HISTORY

On Sunday, December 9, 2007, at approximately 3:00 a.m., a three-car accident occurred in the four westbound lanes of State Road 836 near the 27th Avenue exit. At approximately 3:11 a.m., Florida Highway Patrol Trooper Bobadilla ("Trooper Bobadilla") received a dispatch regarding this accident. When he arrived at the scene, Miami Dade Expressway Authority ("MDX") Road Rangers had closed all but the far-left lane in order to allow law enforcement, fire rescue units, and tow trucks to safely operate and clear the accident scene. A board with an arrow pointing left was set up to notify drivers of the lane closures.

2

After investigating the scene, Trooper Bobadilla returned to his vehicle, which had its emergency lights activated. At the same time, at approximately 4:22 a.m., an MDX Road Ranger adjusting traffic cones observed a black Ford Mustang, driven by Aguilar, and another car racing at a high rate of speed westbound into the single, open left lane near the scene of the original accident. Within seconds, Trooper Bobadilla heard screeching tires and witnessed Aguilar losing control of his Mustang, which careened into the original accident scene, striking multiple cars and persons—one who died almost instantly, two who suffered serious bodily injuries, and one who suffered minor injuries. After the collision, Trooper Bobadilla walked the scene and observed skid marks consistent with the driving pattern of Aguilar's Mustang that were not present prior to the second accident.

Florida Highway Patrol Trooper Christopher Adkinson ("Trooper Adkinson") made contact with Aguilar at the scene of the accident, testifying that Aguilar "was somewhat unresponsive, incoherent," had "blood shot watery eyes," "slurred speech," and "had odor of alcohol" coming from his person and his vehicle. Trooper Adkinson gathered identification information from Aguilar, who was subsequently extracted from his Mustang by a fire rescue unit and transported to Ryder Trauma Center at Jackson Memorial Hospital with serious injuries,

including a collapsed lung. Medical personnel at Ryder Trauma Center induced Aguilar into a coma and intubated him shortly after his arrival.

As there were "significant indicators" that Aguilar was displaying an "alcohol related impairment," Trooper Adkinson responded to Ryder Trauma Center at approximately 5:09 a.m., in order to get a "blood draw." Trooper Adkinson testified no effort was made to get a warrant because of "time restraints," including waiting for contact with the primary traffic homicide investigator who would obtain the warrant, and traveling to the hospital. At Ryder Trauma Center, Trooper Adkinson again smelled an odor of alcohol emanating from Aguilar's face, which was "flushed," and noticed Aguilar's "bloodshot and watery" eyes. Soon thereafter, Trooper Adkinson directed a nurse to obtain a nonconsensual blood sample from Aguilar. The blood sample, taken at 5:42 a.m., showed that Aguilar's blood alcohol level was 0.112.

Aguilar was arrested and charged with DUI Manslaughter (Count I), two counts of DUI causing serious bodily injury (Counts III, IV), and two counts of DUI with person or property damage (Counts II, V). Aguilar filed several motions to suppress, including one to suppress the blood draw test results due to a lack of probable cause and lack of a warrant.

On May 15, 2013, the trial court heard evidence on the suppression motions. In addition to Trooper Adkinson's testimony, the State introduced testimony that to

4

obtain a warrant at the time, it would have taken at least four hours, due to the information and evidence gathering, the writing of the affidavit, sending that affidavit to the Assistant State Attorney for verifying probable cause, and then driving to the emergency judge's house. The State argued that because of the natural metabolization of alcohol in the bloodstream, there were time constraints creating an exigent circumstance to justify an exception to the warrant requirement. The trial court found this evidence was sufficient to establish probable cause to order a nonconsensual blood sample from Aguilar and thus denied the suppression motions.

At trial, Aguilar moved for a judgment of acquittal and direct verdict, which the trial court denied. Subsequently, the jury returned a guilty verdict as to Counts I, III, and V. As to Counts II and IV, the jury found Aguilar guilty of the lesser included offense of DUI. Aguilar was sentenced to fifteen years in state prison as to Count I, six months in the Dade County Jail as to Counts II and IV, five years in state prison as to Count III, and 364 days in the Dade County Jail as to Count V. This appeal followed.

## II. STANDARD OF REVIEW

In reviewing a trial court's ruling on motions to suppress, "appellate courts . . . accord a presumption of correctness . . . to the trial court's determination of historical facts," but "independently review [de novo] mixed questions of law and

fact that ultimately determine constitutional issues arising in the context of the Fourth Amendment." Connor v. State, 803 So. 2d 598, 605, 608 (Fla. 2001).

## II.   ANALYSIS

We write primarily to address Aguilar's argument that the warrantless blood test violated the Fourth Amendment such that his motion to suppress should have been granted.[1]   For reasons stated below, we find that the trial court properly denied Aguilar's motion to suppress and affirm as Counts I, III, and V, but reverse as to Counts II and IV due to violations of the prohibition on double jeopardy.

### A.   Admission of Blood Test Results

"'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (emphasis in original) (footnote omitted) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (1967)).  "One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" Kentucky v. King, 563 U.S. 452, 460

---

[1] Counsel for Aguilar conceded at oral argument that Appellant was not arguing or relying on a violation of Florida's implied consent law. Accordingly, the warrantless blood test was statutorily valid due to Aguilar's implied consent.

(2011) (quoting <u>Mincey v. Arizona</u>, 437 U.S. 385, 394 (1978)). The Supreme Court has twice addressed the applicability of this exigency exception to blood testing in DUI cases.[2]

In <u>Schmerber v. California</u>, 384 U.S. 757 (1966), a blood test was administered to the drunk driver despite his objections. <u>Id.</u> at 759. After concluding the Fourth Amendment applied to DUI blood tests, the Court considered whether the police officer could make the probable cause determination or whether it must be made by a magistrate, who, in turn, would issue a warrant for the blood test. <u>Id.</u> at 767, 770. The Court, however, determined that even if a warrant from a magistrate was required, an emergency—the delay necessary to obtain a warrant under the circumstances threatened the destruction of evidence— existed to excuse the warrantless search. <u>Id.</u> at 770-71. In making this determination, the Court reasoned that because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system," there was no time to secure a warrant due to the time to take the accused to a hospital and investigate the accident scene. <u>Id.</u> Additionally, the Court noted "[t]he police officer who arrived at the scene shortly after the accident smelled liquor on petitioner's breath, and testified that

_____

[2] The Court has also addressed blood tests under the search incident to arrest exception, <u>Birchfield v. North Dakota</u>, 136 S. Ct. 2160 (2016), but that particular exception is not applicable here.

petitioner's eyes were 'bloodshot, watery, sort of a glassy appearance,'" and within two hours, he again observed the petitioner showing "similar symptoms of drunkenness" at the hospital. Id. at 768-69. "Given these special facts," the Court concluded that "the attempt to secure evidence of blood-alcohol content in this case was . . . appropriate [due to the emergency]." Id. at 771.

More recently, the Court again addressed warrantless DUI blood tests in exigent circumstances in Missouri v. McNeely, 569 U.S. 141 (2013). In McNeely, the Court, in a five-to-four majority opinion, reaffirmed that the natural dissipation of alcohol in the bloodstream was not a per se exigency, but one factor to consider in the totality of the circumstances test. Id. at 156, 164-65. The Court noted its Schmerber decision relied not only on the natural dissipation of alcohol, but also the delay to secure a warrant after investigating the scene of the accident and transporting the injured suspect to the hospital. Id. at 150-52. The Court clarified that in "drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so," but recognized "that some[3] circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." Id. at 1561.

[3] Given the nature of DUIs, it will likely be "most" rather than "some." The instant case, occurring in the early hours of Sunday morning, is instructive.

8

We further find instructive <u>Goodman v. State</u>, 229 So. 3d 366 (Fla. 4th DCA 2017). In <u>Goodman</u>, the Fourth District Court of Appeal found exigent circumstances existed to justify a warrantless blood test where: (1) the defendant "absented himself from the scene [of the accident] for over an hour" but returned; (2) the defendant went on his own accord to the hospital for treatment before investigators found the defendant's vehicle and the victim's body; (3) "nearly four hours had passed since the time of the crash" when the investigator reached the hospital; and (4) "[t]he investigator testified that it would have taken an additional two hours to obtain a search warrant." <u>Id.</u> at 381. As the Fourth District noted,

> [t]his was not a 'routine DUI' once the victim's body was discovered. Although the Supreme Court noted that 'the natural dissipation of alcohol in the bloodstream does not constitute an exigency in *every* case,' the Court clearly signaled that in some cases the destruction of evidence by the natural dissipation of alcohol could constitute an exigent circumstance.

<u>Id.</u> (emphasis in original) (quoting <u>McNeely</u>, 569 U.S. at 165).

Factually, the instant case is akin to <u>Schmerber</u> and not to <u>McNeely</u>. However, notwithstanding the factual similarities, applying the totality of the circumstances test makes it clear that the trial court did not err in finding that exigent circumstances were present to justify a warrantless blood test. Aguilar's accident occurred at approximately 4:22 a.m. on a Sunday. The accident was serious, resulting in the instantaneous death of one pedestrian, and caused serious

bodily injuries to two more pedestrians. The accident occurred at the scene of a prior accident. Aguilar himself was seriously injured, taken to a hospital for treatment, and induced into a coma and intubated. At both the accident scene and later at the hospital, Aguilar smelled of alcohol and exhibited symptoms consistent with drunkenness. The blood sample was taken at 5:42 a.m., about ninety minutes after the accident. And the testimony provided by the State was that a warrant would have taken *at least* four hours to obtain from the time the process began.[4] As such, we find no Fourth Amendment violation and conclude that the trial court properly denied the motion to suppress.[5]

[4] Although we doubt hindsight applies here, as we are gauging whether the officers were under the reasonable belief that they were acting in an emergency, we note that ninety minutes after the crash, Aguilar's blood test results showed a BAC of 0.112. Based on the testimony below, a warrant would have taken four hours to obtain. Assuming in the light most favorable to Aguilar that this meant four hours from the accident, it would have taken another two-and-a-half hours after the actual test result time to obtain the warrant, thus allowing Aguilar's BAC to continue dropping. More likely though, as the testimony suggests, the four hours would have begun running when the homicide detective arrived at the scene at approximately 5:30 a.m., over an hour after the accident.

[5] We note that the case of State v. Liles, 191 So. 3d 484, 488–89 (Fla. 5th DCA 2016), review denied, No. SC16-1096, 2016 WL 4245500 (Fla. Aug. 11, 2016), and review denied sub nom., Willis v. State, No. SC16-1118, 2016 WL 4247056 (Fla. Aug. 11, 2016), cert. denied, 137 S. Ct. 688 (2017), is distinguishable from the instant case. In Liles, the Fifth District Court of Appeal declined to uphold warrantless blood searches based on exigent circumstances. Id. However, the appellate court did so not on any legal ground relevant here, but because the State had failed to present sufficient evidence to the trial court that exigent circumstances existed even though it had the burden of doing so. See id. In the instant case, by contrast, the State met its evidentiary burden regarding the existence of exigent circumstances.

**B. Double Jeopardy Issue**

We turn now to address Aguilar's argument that double jeopardy precludes his conviction under Counts II and IV.  Aguilar was convicted of DUI Manslaughter (Count I), one count of DUI causing serious bodily injury (Count III), one count of DUI causing damage to property or person (Count V), and two counts of DUI (Counts II, IV).  Aguilar contends that double jeopardy precludes his convictions under Counts II and IV.  The State concedes that Aguilar is correct. See Art. I, § 9, Fla. Const. (double jeopardy clause); § 775.021(4)(b)(3), Fla. Stat. (2007) (codifying that criminals are not to be convicted of "[o]ffenses which are lesser offenses the statutory elements of which are subsumed by the greater offense"); Labovick v. State, 958 So. 2d 1065, 1068 (Fla. 4th DCA 2007) (holding that DUI is a lesser included offense of DUI manslaughter).  Accordingly, based on the State's proper concession, we direct the trial court to vacate Aguilar's convictions for DUI (Counts II and IV).

**III. CONCLUSION**

Based on the totality of the circumstances, we affirm Aguilar's conviction and sentence for DUI Manslaughter, DUI causing seriously bodily injury, and DUI causing damage to property or person.  We reverse and remand to the trial court

11

however, to vacate Aguilar's convictions for DUI. We affirm as to all other issues without discussion.

Affirmed in part, reversed in part.