Cite as 2021 Ark. App. 96

# ARKANSAS COURT OF APPEALS
DIVISION II

**No.** CR–20–335

| | | |
|---|---|---|
| JAMIE GORDIN | | **Opinion Delivered:** March 3, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CR-19-411] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARBARA ELMORE, JUDGE |
| | | AFFIRMED; REMANDED FOR CORRECTION OF THE SENTENCING ORDER |

## BART F. VIRDEN, Judge

After a bench trial in the Lonoke County Circuit Court, Jamie Gordin was convicted of refusing to submit to arrest, obstructing governmental operations, and hindering apprehension of a person who committed a Class C misdemeanor. She now appeals. We affirm and remand for correction of the sentencing order.

### I. *Relevant Facts*

On January 30, 2019, Jamie was arrested on four misdemeanor charges: obstructing governmental operations, hindering apprehension of a person who committed a Class C misdemeanor, attempt to influence public servant, and resisting arrest. The trial was held in Cabot District Court on August 21. Jamie was found guilty of obstructing governmental operations, resisting arrest, and hindering apprehension. She was acquitted of the attempt-to-influence charge.

On August 30, Jamie appealed to the circuit court. Jamie waived her right to a jury trial, and the bench trial took place on February 12, 2020. At the trial, Captain David Bufford of the Lonoke County Sheriff's Department testified that on January 30, 2019, he was informed of the location of a suspect (Jamie's brother, Andrew Gordin) who had failed to appear in court and had a warrant for his arrest. During the pendency of Andrew's domestic-violence-related case, he had made several threats about killing law enforcement, and he was believed to be armed. The response team was en route to the location, Andrew's house, and had almost arrived when a small white car pulled up to the chain across the end of the driveway. The response team had originally planned to approach quietly, park close to the house, and then call the suspect outside; however, Jamie was parked in the road blocking the driveway and honking her horn, so the team parked behind Jamie and got out of the vehicle. Captain Bufford stated that Jamie "kept honking the horn. Just constant honking," and he was worried the honking would reveal the police presence to the suspect, so he turned on the blue lights and approached the car. He saw that there were two small children and a teenager in the back seat. He explained to Jamie that the situation was dangerous, and the team was approaching quietly "for safety." Captain Bufford testified that he tried to explain why the response team was there and requested that Jamie stop honking the car horn but that Jamie "kept cursing." Captain Bufford was in uniform and identified himself. Jamie refused to give the officers her name and stated that she was going to call the police. Jamie claimed that she was friends with both the sheriff and members of the FBI and that Bufford was going to lose his job over this. She refused to tell the officers anything

except that her minor son was in the house. Captain Bufford testified that they decided to take Jamie into custody because she was being belligerent and because she honked the car horn to alert the occupant of the house to the police presence to give him time to escape. Captain Bufford also explained that "we did not need to be doing that in front of the kids." When the officers tried to arrest Jamie, she grabbed the steering wheel and refused to let go. Captain Bufford stated that Jamie was not physically fighting, but she was resisting "to the point that we had to place her on the ground to get handcuffs on her."

John Staley, the Lonoke County Sheriff, also was present during Jamie's arrest. He also testified that the team was approaching the house to serve a warrant on Andrew Gordin, whom they believe to be armed. He explained that the plan was to drive up the driveway and park near the house, but Jamie's car was blocking the driveway about one hundred yards from the house. Sheriff Staley explained that Andrew was a suspect in a domestic-battery case, and he had threatened to kill law enforcement if they tried to arrest him, so they were being extremely careful in executing the parole warrant. Sheriff Staley testified that while Captain Bufford talked with Jamie, who was honking the car horn, he secured the perimeter and then approached the car. Sheriff Staley denied that he knew Jamie and testified that he did not recognize her. Jamie refused to give her name. Sheriff Staley told Jamie to get out of the car because there were kids in the back seat, and she replied that her son was "up there." Sheriff Staley also testified that Jamie would not let go of the steering wheel, and they had to physically remove her from the car and take her to the ground to handcuff her.

Jamie moved to dismiss all three charges. Regarding the resisting-arrest charge, she argued that her car was "on a public thoroughfare" when officers tried to "yank" her out of her car. She asserted that, according to the officers' testimony, she did not physically attack them, and to resist arrest, the person must use or threaten to use physical force or create a substantial risk of physical injury to any other person. Jamie explained that she simply tried to stay in her car by holding on to the steering wheel. On the hindering-apprehension charge, Jamie asserted that the State presented no evidence that she knowingly warned another person of impending discovery, and there was no evidence that she knew someone was being apprehended or that she knew who that person was. Lastly, Jamie argued that, again, she did not knowingly impair a governmental function because she was not aware of what governmental function was taking place or that the police were there to apprehend someone. Moreover, she argued, refusing to give her name or her son's name cannot be construed as impairing a governmental function. Lastly, she urged the court to "look at this through the lens of a person who's not on private property, not on someone else's property, and is all of the sudden there is a SWAT team behind her. I do not believe it's unreasonable to be concerned and possibly not even give your name at that point, Your Honor." The circuit court denied the motions.

After the court denied the motions, Jamie testified. She explained that she had been at the residence to pick up her brother, who was going to help her move, and when she pulled into the driveway, she heard a diesel truck pull in behind her. She stated that a man in uniform approached her car and told her to put her hands on the wheel. Jamie explained

that she was afraid because it was dark, the officers had their guns out, her minor son was coming down the driveway, and the officers would not listen to her. Then, the officers told her she was being arrested but did not tell her why. She testified that she "gave him my hands" and offered to get her driver's license out of her purse, which they refused to let her do. Jamie stated that when she was sitting in the back seat of the police vehicle, she told the officers her name and date of birth. Jamie testified that she was fully cooperative and did exactly as she was told to do.

From the bench, the circuit court found that Jamie was guilty of refusing to submit to arrest, a lesser included offense of resisting arrest. The court also found her guilty of obstructing governmental operations and hindering apprehension. The sentencing order entered February 12 sets forth that Jamie was convicted of *resisting* arrest, obstructing governmental operations and hindering apprehension. Jamie was sentenced to sixty days to be served on weekends in the Lonoke County Jail, with twelve months' probation. Jamie was ordered to pay costs and fees.

Jamie timely filed her notice of appeal on February 24.

## II. *Discussion*

On appeal, Jamie contends that there is insufficient evidence to sustain her convictions of resisting arrest, obstructing governmental operations, and hindering apprehension. A motion to dismiss at a bench trial is a challenge to the sufficiency of the evidence. *Harris v. State*, 2016 Ark. App. 23, 480 S.W.3d 229. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the

State and consider only the evidence that supports the verdict. *Hester v. State*, 2020 Ark. App. 571, 612 S.W.3d 782. We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* We do not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the finder of fact, which is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* A person's intent or state of mind is rarely capable of proof by direct evidence and most often is inferred from the circumstances of the crime. *See Steggall v. State*, 340 Ark. 184, 8 S.W.3d 538 (2000). Whether circumstantial evidence excludes every reasonable hypothesis consistent with innocence is a determination for the finder of fact; on review, we must determine whether the fact-finder had to resort to speculation and conjecture to reach its decision. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821.

Preliminarily, we address an error in the sentencing order that relates to Jamie's first point on appeal that there was insufficient evidence to convict her of resisting arrest. Jamie was not convicted of resisting arrest. The circuit court orally ruled that it found Jamie "guilty of refusing to submit, the lesser included offense under resisting arrest." However, the

sentencing order mistakenly sets forth that Jamie was convicted of *resisting* arrest.[1] Because Jamie was not actually convicted of resisting arrest, her substantial-evidence arguments in that regard are misplaced. In light of the court's clear oral ruling, we hold that this is a scrivener's error, and we remand to the circuit court to correct the sentencing order. *See Burr v. State*, 2016 Ark. App. 182, 487 S.W.3d 395 (remanding to the circuit court to correct a scrivener's error in the sentencing order that differed from the court's oral ruling).

Moreover, the evidence is sufficient to sustain Jamie's conviction of refusing to submit to arrest. Arkansas Code Annotated section 5-54-103(b)(1) (Repl. 2016) provides that a person commits the offense of refusal to submit to arrest if he or she knowingly refuses to submit to arrest by a person known by him or her to be a law enforcement officer effecting an arrest. As used in this subsection, "refuses" means active or passive refusal. Ark. Code Ann. § 5-54-103(b)(2).

Here, Jamie testified that she knew she was being arrested, although she did not understand why. Captain Bufford and Sherriff Staley testified they were in uniform, the vehicle's blue lights were on, and they informed Jamie that they were arresting her. Captain Bufford testified that she clung to the steering wheel requiring them to pry her away. Sheriff Staley testified that Jamie used her body weight to try to stay inside the car. The circuit

---

[1]The sentencing order is also incorrect in that the box indicating that the defendant entered a negotiated plea regarding the "resisting arrest" charge is checked. The sentencing order should reflect that Jamie pleaded not guilty, and we order the circuit court to correct this error on remand as well.

7

court did not err in finding that Jamie's actions constituted knowingly, passively refusing to submit to arrest.

Next, though Jamie concedes that her "actions did impede or hinder the functions of the Lonoke County Sheriff's Department," she contends that the State did not prove that she "knowingly" obstructed a governmental function because she was not aware that a governmental function was taking place. Jamie's argument is not well taken.

A person commits the offense of obstructing governmental operations if he or she knowingly obstructs, impairs, or hinders the performance of any governmental function. Ark. Code Ann. § 5-54-102(a)(1).

The circuit court did not have to resort to speculation and conjecture to conclude that Jamie knowingly interfered with governmental operations. Both Captain Bufford and Sheriff Staley testified that the vehicle's blue lights were activated after the team pulled in behind Jamie. Captain Bufford testified that he was in uniform when he told Jamie to stop honking the horn and that the situation was "dangerous." Captain Bufford and Sheriff Staley testified that Jamie had honked her horn repeatedly, even while Bufford was trying to talk to her and explain the purpose of the police presence. The circuit court could have inferred without resorting to speculation that Jamie's purpose for honking the horn was to alert her brother, an occupant of the house, to police presence, giving him time to escape. *See Sharp v. State*, 2019 Ark. App. 506, 588 S.W.3d 770 (holding that in a bench trial, a court is allowed to draw on common knowledge and experience to infer intent from the circumstances).

For her last point on appeal, Jamie asserts that the State did not present sufficient evidence that she purposely hindered Andrew's apprehension, and the circuit court erroneously engaged in speculation to convict her. We disagree.

A person commits the offense of hindering apprehension if he or she with purpose to hinder the apprehension, prosecution, conviction, or punishment of another person for an offense, warns the other person of impending discovery, apprehension, or identification. Ark. Code Ann. § 5-54-105(a)(5).

The same evidence set forth above is sufficient to support Jamie's conviction for hindering apprehension. There was repeated testimony that the officers were in uniform, and the armored vehicle had its blue lights on. Captain Bufford testified that Jamie continuously honked the horn from the time she pulled into the driveway and even while he was trying to explain the situation to her. Given the evidence, the circuit court could conclude that the circumstantial evidence excluded every other reasonable hypothesis other than Jamie's guilt. Accordingly, we affirm and remand for correction of the sentencing order.

Affirmed; remanded for correction of the sentencing order.

GRUBER and BARRETT, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.